IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMILLA MONROE O/B/O          )
JADA D. WILSON                )
                              )
          Plaintiff,          )
                              )
     v.                       )   Civ. No. 04-1387-SLR
                              )
JO ANNE BARNHART,             )
COMMISSIONER, SOCIAL SECURITY )
ADMINISTRATION,               )
                              )
          Defendant.          )

_____

Diana S. Erickson, Esquire.  Counsel for Plaintiff.

Colm F. Connolly, United States Attorney, United States
Attorney's Office, Wilmington, Delaware, and David F. Chermol,
Special Assistant United States Attorney, Social Security
Administration, Philadelphia, Pennsylvania.  Counsel for
Defendant.  Of Counsel:  Donna L. Calvert, Regional Chief
Counsel, Social Security Administration, Philadelphia,
Pennsylvania.

_____

**MEMORANDUM OPINION**

Dated: March 29 , 2006
Wilmington, Delaware

**ROBINSON, Chief Judge**

## I. INTRODUCTION

Plaintiff Jamilla Monroe ("plaintiff") filed this action on behalf of Jada D. Wilson ("claimant") and against defendant Jo Anne B. Barnhart ("defendant"), Commissioner of Social Security, on October 25, 2004. (D.I. 2) Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), of a decision by defendant denying her claim for disability income benefits under Title XVI of the Social Security Act. (D.I. 12 at 8-11) Currently before the court are the parties' cross motions for summary judgment. (D.I. 14, 18) For the reasons that follow, the parties' motions are denied and the case is remanded for further proceedings.

## II. BACKGROUND

### A. Procedural Background

Plaintiff, the mother of claimant, filed an application for supplemental security income on July 17, 2001 due to claimant's disability caused by chronic asthma; the application received a protective filing date of July 11, 2001. (D.I. 12 at 55-60, 65-83) The application alleged a disability onset date of January 1, 2001. (Id. at 55) The application was initially denied on September 10, 2001 because it was determined that claimant's condition "does not cause marked and severe limitations." (Id. at 40-43) Plaintiff appealed the decision on October 5, 2001 by requesting a hearing before an administrative law judge ("ALJ").

(<u>Id.</u> at 44)  On August 27, 2002, a hearing was held before the
ALJ.  (D.I. 12 at 24-38)  On October 29, 2002, the ALJ denied
plaintiff's claim.  (<u>Id.</u> at 15-23)  The ALJ found the following:

1.  Claimant has not engaged in substantial gainful
    activity since the alleged onset of disability (20
    CFR § 416.972).
2.  Claimant has asthma, which is a severe impairment
    (20 CFR § 416.924(c)).
3.  The statements of claimant's mother are partly
    supported by the medical evidence of record.
4.  The limitations, resulting from the effects of
    claimant's impairment, do not meet, medically
    equal, or functionally equal the criteria of any
    of the listed impairments in Appendix 1, Subpart
    P, Regulations No. 4 (20 CFR § 416.924(d)).
5.  Claimant does not have a medically determinable
    physical or mental impairment or combination of
    impairments that results in marked and severe
    functional limitations.
6.  Claimant has not been under a "disability" as
    defined in the Social Security Act, at any time
    through the date of this decision (20 CFR §
    416.924(d)).

(<u>Id.</u> at 22-23)  On August 26, 2004, the Appeals Council declined
to review the ALJ's decision and his decision became the final
decision of defendant.  (<u>Id.</u> at 8-11)

## B.  Facts Evinced At The Administrative Hearing

Jada M. Wilson, the claimant, was present at the
administrative hearing and represented by a paralegal, Lisa A.
Furber.  (D.I. 12 at 26)  Plaintiff appeared at the hearing as a
witness.  (<u>Id.</u>)  Claimant was two-and-a-half years old at the
time of the hearing.  (<u>Id.</u> at 27)  According to plaintiff,
claimant's asthma condition was diagnosed when she was between
two and five months old at Kings County Hospital in Brooklyn, New

2

York.  (Id. at 32)  Claimant has been hospitalized for asthma-related conditions on five occasions and was required to take the steroid Prelone on several occasions while hospitalized.  (Id. at 28-29)  In addition, claimant has had two upper respiratory infections that were treated in a hospital with antibiotics. (D.I. 12 at 35)  Claimant was prescribed a daily dose of Singulair and four-times-daily doses of Albuterol.  (Id. at 32) According to plaintiff, claimant has visited a primary care doctor twice and regularly visits a heart specialist due to a heart murmur.  (Id. at 31)

Claimant does not attend daycare and is in the full-time care of plaintiff.  (Id. at 30)  Among the symptoms of claimant's asthma condition, as reported by plaintiff, are: wheezing, shortness of breath, colds and retractions.[1]  (D.I. 12 at 33) Plaintiff believes that claimant is disabled because "she has severe asthma attacks, which limits [sic] her from a lot of activities."  (Id. at 28)  Plaintiff asserts that claimant has trouble breathing in extreme temperatures, which prevents her from going outdoors very often.  (Id. at 30-31)  Plaintiff explains that claimant's asthma symptoms worsen due to "dust, the weather, pets, a cold, pollen - any little thing - and milk."

---

[1]Plaintiff explained that "retractions" occur when "you can see it through [claimant's] neck when she's breathing . . . . It goes in and out like she's using . . . too many muscles I think to breathe."  (D.I. 12 at 33)

3

(Id. at 34)  Plaintiff was told by a doctor to keep claimant in an air-conditioned environment, possibly with a humidifier.  (Id. at 36)  In addition, plaintiff notes that claimant is unable to climb stairs on her own without breathing difficulty.  (D.I. 12 at 34)

## C. Medical Evidence

Hospital records disclose that plaintiff gave birth to claimant on January 5, 2000 in the University Hospital of Brooklyn.  (Id. at 93-99)  After the birth of claimant, plaintiff was given discharge instructions for claimant which described her as a "normal newborn" having an "unremarkable physical exam." (Id. at 93-94)

A triage form completed on May 2, 2000 at Kings County Hospital Pediatric Emergency noted that plaintiff complained of claimant having an episode of wheezing and a cold with coughing and sneezing.  (Id. at 187)  Upon physical examination, claimant's breathing was described as "mildly labored", with mild retractions and mild wheezing.  (Id. at 187)  Claimant was diagnosed with bronchiolitis.  (D.I. 12 at 191)

On May 18, 2000, claimant visited the emergency room at Kings County Hospital Center ("KCHC") with complaints of wheezing and cough.  (Id. at 194)  Claimant was diagnosed with reactive airway disease and prescribed Albuterol by nebulizer and Prelone. (Id. at 193)  Claimant was discharged in stable condition and

4

plaintiff was advised to return with her in case of wheezing or shortness of breath. (Id. at 193)

Claimant again visited KCHC on May 20, 2000 with complaints of wheezing as articulated by plaintiff. (Id. at 201) Hospital notes reflect that claimant's complaints stemmed from bronchiolitis and asthma. (D.I. 12 at 200) Continued use of Albuterol and Prelone was ordered for claimant. (Id. at 200) Claimant was discharged and plaintiff was asked to return with claimant in case her condition worsened or she developed a fever. (Id. at 200)

Claimant's next visit to the emergency room at KCHC occurred on June 12, 2000, with wheezing as her chief complaint. (Id. at 208) Claimant was prescribed Albuterol and Prednisone to treat her asthma symptoms and released in good condition. (Id. at 207, 212) Thereafter, claimant was treated and released for wheezing at KCHC on July 15, 2000. (D.I. 12 at 213) Upon her release, she was prescribed continued use of Albuterol and Prelone. (Id. at 218, 218).

On August 3, 2000, claimant was admitted to KCHC with a chief complaint of acute asthma exacerbation. (Id. at 221) Hospital records note that plaintiff stated that "all asthma attacks have been stimulated by a cold." (Id. at 229) According to admission records, claimant was brought to the emergency room after she had experienced cough, wheezing, and fever with no

relief from an Albuterol nebulizer. (Id. at 221)  A history of claimant's illnesses taken upon her admission included the illnesses of asthma, umbilical hernia, and a heart murmur.  (D.I. 12 at 233)  Claimant was treated at the hospital with Albuterol, Prednisone, amoxicillin, oxygen, and a regular diet.  (Id. at 221, 238)  Upon physical examination at the hospital on August 4, 2000, claimant was found to have good breath sounds, with no wheezing or retractions.  (Id. at 235)  Claimant was discharged on August 7, 2000 after being prescribed amoxicillin, Albuterol, and the use of a pediatric aerochamber with facemask.  (Id. at 221)

Claimant again visited the emergency room on December 2, 2000, where complaints of fever and wheezing in claimant were noted by plaintiff.  (Id. at 100-105)  An upper respiratory infection was diagnosed, but claimant's breath sounds were assessed as "clear" and she was described as "alert, active, happy, playful" and in no apparent distress.  (D.I. 12 at 100-103)

Claimant visited the emergency room at KCHC on December 4, 2000, when plaintiff reported that claimant had been suffering from wheezing, coughing, running nose, fever, and vomiting.  (Id. at 247)  After undergoing physical evaluation and being given Tylenol and Albuterol, claimant was discharged with instructions to "continue with the medication as instructed by primary

6

pediatrician" and return in case of further "vomiting, fever, wheezing, difficulty breathing." (Id. at 242, 246)

On March 30, 2001, claimant visited KCHC, when plaintiff stated that claimant suffered from wheezing, cold, cough, and chest congestion. (Id. at 255) Claimant was treated with Albuterol and released the same day in good condition with directions to continue use of Albuterol and Prednisone. (Id. at 250, 254-256)

On August 20, 2001, claimant was examined by Dr. Nilufar Maniky at Kings-M.D. Medical Services after complaining of asthma. (D.I. 12 at 106-109) Claimant was described by Dr. Maniky as an "uncooperative, well-nourished, well-developed, alert child in no acute distress." (Id. at 107) Dr. Maniky concluded that claimant's level of social interaction was "normal" and that her prognosis was "fair." (Id. at 108-109)

Claimant visited the emergency room at KCHC on August 22, 2001, with plaintiff complaining that claimant suffered from wheezing, cough and pus running from her ear. (Id. at 257) A radiograph conducted on claimant's chest suggested that her lungs were hyperinflated. (Id. at 258) Claimant was diagnosed with asthma exacerbation and right otitis media. (D.I. 12 at 263) Claimant's wheezing episode was resolved with use of Albuterol and her otitis media was also resolved. (Id. at 264) Claimant was discharged with instructions to use nebulized Albuterol and

7

Prednisone, with follow-up care for her asthma and otitis media to be received from her primary physician.  (Id. at 264)

A review of claimant's health as documented by Kings-M.D. Medical Services on August 23, 2001 reflects that claimant had a history of bronchial asthma, had experienced her first asthma episode at five months of age and that the episodes worsened with age.  (Id. at 106, 108)  The history noted that claimant experienced her most recent asthma attack on August 20, 2001, had been using a nebulizer only as needed, had been seen five times in the Kings County Hospital emergency room in the past year, and had been admitted six times to the Kings County Hospital.  (Id. at 106)  The history also reflected that plaintiff and siblings each have a history of asthma.  (D.I. 12 at 107)  Notes regarding a physical examination of claimant by Dr. Nilufar Maniky on August 8, 2001 document that claimant exhibited normal social interaction, had a full range of ability to perform age-appropriate daily activities, and had a fair prognosis.  (Id. at 108-109)

A childhood disability evaluation form signed by Dr. V. B. Gupta on September 7, 2001 reflects that claimant's impairment is bronchial asthma, that the impairment is severe, but that it does not meet, medically equal, or functionally equal the listings.  (Id. at 110-115)  The evaluation form indicates that claimant had no limitations with respect to:  (1) acquiring and using

8

information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; or (5) caring for herself. (Id. at 112-113) The only noted limitation of claimant concerned her health and physical well-being due to her bronchial asthma, but even this limitation was "less than marked" and "not of listing level severity". (Id. at 112-113)

Office notes recorded on July 18, 2002 by Dr. Abimbola O. Osunkoya reflect that claimant complained of exacerbation of asthma at night and shortness of breath on mild exertion. (D.I. 12 at 160) The notes also reflect that claimant had a history of asthma and undiagnosed cardiac murmurs. (Id. at 160) Dr. Osunkoya prescribed Singulair and continued use of an Albuterol nebulizer to treat claimant's asthma, while ordering an echocardiogram to investigate her cardiac murmur. (Id. at 162)

After performing and reviewing an echocardiogram, Dr. Stuart Septimus, a pediatric cardiologist, noted on August 15, 2002 that the test revealed "normal intracardiac anatomy and normal cardiac function." (Id. at 163) Dr. Septimus, characterizing the murmur as an "innocent murmur", discharged claimant from follow-up and ordered "no special precautions". (Id. at 163) Additionally, Dr. Septimus noted that claimant's "asthma symptoms do not appear to be cardiovascular in origin" and her "respiratory problems appear to be related to reactive airway disease." (D.I. 12 at

9

163, 165)

## III. STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to

any fact, if supported by substantial evidence, [are]

conclusive," and the court will set aside the Commissioner's

denial of plaintiff's claim only if it is "unsupported by

substantial evidence."  42 U.S.C. § 405(g) (2002); 5 U.S.C. §

706(2)(E) (1999); see Monsour Med. Ctr. v. Heckler, 806 F.2d

1185, 1190 (3d Cir. 1986).  As the Supreme Court has held,

> "[s]ubstantial evidence is more than a mere scintilla.
> It means such relevant evidence as a reasonable mind
> might accept as adequate to support a conclusion."
> Accordingly, it "must do more than create a suspicion
> of the existence of the fact to be established . . . .
> It must be enough to justify, if the trial were to a
> jury, a refusal to direct a verdict when the conclusion
> sought to be drawn from it is one of fact for the
> jury."

Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting

NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300

(1939)).

The Supreme Court also has embraced this standard as the

appropriate standard for determining the availability of summary

judgment pursuant to Fed. R. Civ. P. 56:

> The inquiry performed is the threshold inquiry of
> determining whether there is the need for a trial —
> whether, in other words, there are any genuine factual
> issues that properly can be resolved only by a finder
> of fact because they may reasonably be resolved in
> favor of either party.
>      Petitioners suggest, and we agree, that this
> standard mirrors the standard for a directed verdict

10

under Federal Rule of Civil Procedure 50(a), which is
that the trial judge must direct a verdict if, under
the governing law, there can be but one reasonable
conclusion as to the verdict.  If reasonable minds
could differ as to the import of the evidence, however,
a verdict should not be directed.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)

(internal citations omitted).  Thus, in the context of judicial

review under § 405(g),

> [a] single piece of evidence will not satisfy the
> substantiality test if the [Commissioner] ignores, or
> fails to resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it is
> overwhelmed by other evidence — particularly certain
> types of evidence (e.g., that offered by treating
> physicians) — or if it really constitutes not evidence
> but mere conclusion.

Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986) (quoting

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  Where, for

example, the countervailing evidence consists primarily of the

claimant's subjective complaints of disabling pain, the

Commissioner "must consider the subjective pain and specify his

reasons for rejecting these claims and support his conclusion

with medical evidence in the record."  Mattel v. Bowen, 926 F.2d

240, 245 (3d Cir. 1990).

## IV.  DISCUSSION

### A.  Disability Determination Process

Congress enacted the Supplemental Security Income Program in

1972 "to assist 'individuals who have attained age 65 or are

blind or disabled' by setting a guaranteed minimum income level

11

for such persons." Sullivan v. Zebley, 493 U.S. 521, 524 (1990) (quoting 42 U.S.C. § 1381). The Social Security Act provides that a child under age 18 is "disabled" for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (2004).

The Commissioner follows a three-step process in determining childhood disabilities. See 20 C.F.R. § 416.924 (2004). A child will qualify for SSI benefits if the Commissioner determines that: (1) the child is not engaged in substantial gainful activity; (2) the child has a medically determinable severe impairment; and (3) the impairment meets, medically equals, or functionally equals the severity of an impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1, and that impairment meets the durational requirement. Id.

To qualify for disability based on asthma attacks, the applicant must show that she suffered from attacks

in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03B (2004).

12

To determine functional equivalence, the ALJ must "assess all functional limitations caused by the child's condition to determine if the impairment(s) is functionally equivalent in severity to any listed impairment that includes disabling functional limitations in its criteria." 20 C.F.R. § 416.926a(a). An impairment functionally equals in severity a listed impairment if it results in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. 20 C.F.R. § 416.926a(d). The domains assessed are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

To justify his denial of benefits, the ALJ must adequately support his determination that an applicant's condition does not meet or medically equal the asthma attack listing. See 20 C.F.R. § 416.926(a) (2004).

## B. Application of the Three Step Test

In the case at bar, the first and second steps of the three-step test to determine whether a child is disabled are not at issue: (1) claimant is not currently engaged in substantial gainful activity; and (2) she suffers from a severe impairment. Step three is in contention, as plaintiff asserts that claimant suffers from an impairment which is severe enough to meet the

13

disability criteria. The ALJ found otherwise, concluding that the limitations which stem from claimant's impairment "do not meet, medically equal, or functionally equal the criteria of any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 (20 CFR § 416.924(d))." (Id. at 22) In his conclusion, the ALJ noted that claimant has not been under a "disability" at any time through the date of his decision, despite the fact that "the statements of claimant's mother are partly supported by the medical evidence of record." (Id. at 22-23)

Plaintiff challenges the ALJ's findings in two areas. As her first argument, plaintiff asserts that the ALJ committed reversible error when he concluded that claimant's impairments met a listing but then concluded that she was not disabled. Plaintiff alleges that the analysis used by the ALJ is inconsistent with the statutory structure because it would require disability to be reevaluated on a monthly basis. Plaintiff contends that such an analysis is also inconsistent with the regulations. As the final assertion of her first argument, plaintiff suggests that the ALJ's reasoning "fails to acknowledge the realities of disability" and "defeats the practical concerns of the administrative review structure."

As a second contention, plaintiff claims that the decision of the ALJ is not supported by substantial evidence in the record as a whole because the evidence requires a finding that claimant

14

is disabled.  Plaintiff argues that the ALJ mischaracterized her testimony and, in doing so, failed to properly credit the evidence she offered.  Plaintiff maintains that, even if the ALJ did not err in discrediting her testimony, his decision is still not supported by substantial evidence and should be reversed.

For the court to set aside defendant's conclusion that claimant was not under a "disability" as defined by the Social Security Act and to grant plaintiff's motion for summary judgment, plaintiff must show that the ALJ's findings are not supported by substantial evidence.  The court, therefore, recognizes that defendant's decision is entitled to substantial deference.

## C.  Analysis

The court finds that the ALJ's disability determination is not supported by substantial evidence.  The court also finds, however, that plaintiff has not carried her burden to prove that claimant is suffering from a severe impairment that is expected to last more than one year.  The parties have focused only on claimant's asthma.  The underlying regulations applying to this ailment include sections $103.03B^2$, $103.03C^3$ and $3.03B^4$.

---

[2] The listing for asthma attacks under Section 103.03B states:

> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for

15

The ALJ's determination is wanting in several respects.

First, it is unclear what durational limitations the ALJ used in

judging the claim at issue. Based on his initial discussion, it

appeared that the ALJ evaluated the eligibility of claimant for

disability benefits based on the period between May 2, 2000, the

date upon which claimant's asthma symptoms were first documented,

and October 29, 2002, the date of the ALJ's decision. (D.I. 12

at 18-23) The nine documented asthma attacks[5] within this 30-

---

control of asthma counts as two attacks, and an evaluation
period of at least 12 consecutive months must be used to
determine the frequency of attacks.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 103.03B (2005).

[3]The listing under Section 103.03C reads:

Asthma attacks with [p]ersistent low-grade wheezing between
acute attacks or absence of extended symptom-free periods
requiring daytime and nocturnal use of sympathomimetic
bronchodilators with one of the following:

1. Persistent prolonged expiration with radiographic or
other appropriate imaging techniques evidence of pulmonary
hyperinflation or peribronchial disease; or

2. Short courses of corticosteroids that average more than 5
days per month for at least 3 months during a 12-month
period.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 103.03C (2005).

[4]The listing for asthma attacks under Section 3.03B is
identical to that under Section 103.03B.

[5]In her argument regarding the durational requirement,
plaintiff does not contend that defendant has failed to account
for any of claimant's asthma attacks that would allegedly meet
the listings.

16

month period of time do not meet the frequency requirement under listings 103.03B and 3.03B.  However, in his ultimate determination of disability, the ALJ appears to have used 12-month increments to decide whether claimant met the listings. Although it is at least arguable that claimant's nine documented asthma attacks between May 2000 and June 2001 do meet the relevant listings, the ALJ concluded otherwise, citing as support for his conclusion listings that pertain to the **payment** of benefits to a claimant rather than the listings that pertain to the **eligibility** for benefits of a claimant.  (D.I. 12 at 21; compare 20 C.F.R. §§ 416.200, 416.305, 416.330(a), 416.335, 416.420, 416.501)  The court is not clear exactly what standard the ALJ used in the first instance, or what standard should be applied in a case such as this where the disability appears, from the record, to have lasted only 12 months.  The case will be remanded for clarification of this point.

Remand is also necessary for clarification of the record as it pertains to various credibility determinations made by the ALJ in reaching his disability determination.  For a minor who is unable to adequately describe her symptoms, an ALJ is directed to accept as a statement of these symptoms the "description given by the person most familiar with the individual, such as a parent, other relative, or guardian."  20 C.F.R. § 416.928(a).  In this case, plaintiff is the claimant's primary caregiver and

17

representative, and plaintiff's testimony comprised a significant portion of the record created at the administrative hearing. In terms of plaintiff's testimony at the administrative hearing, it was within the province of the ALJ to make credibility assessments. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983). Indeed, it is the ALJ's responsibility to examine hearing testimony critically and to assign different levels of importance to distinct pieces of evidence; however, the ALJ may not reject any evidence for no reason or for the wrong reason. Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993). Ultimately, the ALJ must consider the extent to which claimant's alleged symptoms, as described at the hearing, can reasonably be accepted as consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529, 416.929.

The record at bar indicates that plaintiff's statements with respect to claimant's "frequent exacerbations" of asthma, the presence of low-grade wheezing between asthma attacks, the absence of extended symptom-free periods, and the need for recent treatment for claimant were all discounted by the ALJ, and that the ALJ discounted such testimony at least in part because of plaintiff's failure to seek intensive treatment for claimant's asthma after June 2001. (D.I. 12 at 21-22) According to the regulations, an ALJ who seeks to rely on the failure of one to seek treatment as evidence to discredit one's testimony must

18

first consider the possible reasons for such a failure and must
not make unsupported inferences.  Social Security Ruling 96-7p
(July 2, 1996).[6]  The disability determination at bar does not
include any discussion about the possible reasons for the dearth
of medical information about claimant's condition post-June
2001.[7]  Since the ALJ has not clearly considered all relevant
evidence in determining the credibility of plaintiff's statements
and the weight such evidence should play in his disability
determination, the ALJ's opinion on this issue is not supported

---

[6]The relevant language states:

[T]he individual's statements may be less credible
if the level or frequency of treatment is inconsistent
with the level of complaints, or if the medical reports
or records show that the individual is not following
the treatment as prescribed and there are no good
reasons for this failure.  However, the adjudicator
must not draw any inferences about an individual's
symptoms and their functional effects from a failure
to seek or pursue regular medical treatment without
first considering any explanations that the individual
may provide, or other information in the case record,
that my explain infrequent or irregular medical visits
or failure to seek medical treatment.  The adjudicator
may need to recontact the individual or question the
individual at the administrative proceeding in order
to determine whether there are good reasons the
individual does not seek medical treatment or does not
pursue treatment in a consistent manner.  The explanations
provided by the individual may provide insight into the
individual's credibility.

[7]And, of course, the dearth of medical information is the
obstacle to a ruling in favor of plaintiff.  The court cannot
discern from the record at bar what claimant's condition was at
any relevant time period.

19

by substantial evidence and should be reassessed.[8]

**V. CONCLUSION**

For the reasons stated above, the court finds that defendant has not adequately supported and explained her findings in this case. Thus, the court shall remand the case to defendant for further proceedings, consistent with this memorandum opinion. An appropriate order shall issue.

---

[8]The court notes as well that the ALJ failed to adequately explain his reasoning for discounting the medical assessments of Dr. Osunkoya, one of the few treating physicians whose records have been presented to the court in this proceeding.  (D.I. 12 at 21)

20